# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:11cv19

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| Vs. | ) JUDGMENT ) |
| NAMAN ENTERPRISES, INC., *et al.*, | ) ) |
| Defendants. | ) ) ) |

**THIS MATTER** having come before the court on plaintiffs' Dunkin' Donuts Franchised Restaurants, LLC; Baskin-Robbins Franchised Shops, LLC; DD IP Holder, LLC; and BRIP Holder, LLC's Motion for Summary Judgment (#37). Counsel for defendants have also filed a Motion to Withdraw as Attorney (#49). Having carefully considered such motions, the memoranda of law, and evidentiary materials submitted, and having conducted a hearing on the motions, the court enters the following findings, conclusions, and Order granting the motions for the reasons provided.

## FINDINGS AND CONCLUSIONS

**1. Nature of the Action**

Defendants were operating two combination Dunkin' Donuts/Baskin-Robbins stores in Matthews and Mint Hill, North Carolina, (#1, ¶ 20), which are located within the Western District of North Carolina. Plaintiffs allege that defendants failed to pay franchise and advertising fees beginning in approximately March, 2010. Plaintiffs terminated the franchise rights as to each store in June, 2010, primarily based upon defendants' failure to pay the fees, and plaintiffs seek franchise and advertising fees from March of 2010 through July 31, 2011, plus interest, attorneys' fees, and costs.

## II. Factual Background

### A. Franchise Agreements

Plaintiffs and Rachana entered into the Mint Hill franchise agreement on August 25, 2005. (#38-4 at 6.) Plaintiffs and Naman entered into the Matthews franchise agreement on October 29, 2005. (Id. at 57.) The parties agreed to be bound by Massachusetts law, and each agreement states that, with regard to default:

> FRANCHISEE shall pay to FRANCHISOR all damages, costs and expenses, including, but not limit to, reasonable investigation and attorney's fees and other reasonable expenses and costs such as travel costs and payroll expenses for FRANCHISOR'S employees, incurred in obtaining injunctive or other relief for the enforcement of any provisions of this [default] Section.

(Id. at pp. 31, 85.)

Defendants notified plaintiffs of their inability to pay the franchise fees. In a letter prepared by their former counsel dated June 3, 2010, Defendants acknowledged their failure to pay, noting that due to suffering sales, they were unable to "sustain the current agreement" with plaintiffs. (#38-4 at 101.) After By June 14, 2010, plaintiffs notified defendants Rachana and Naman individually that the opportunity to cure had passed and that the franchise agreements were terminated. (#38-5 at 3-4, 7-8.)

With regard to the Mint Hill store, plaintiff Dunkin' Donuts states that Rachana owes a total of $104,882.93 for franchise and advertising fees. (#38 at 3.) Plaintiff Baskin-Robbins states that Rachana owes $25,321.55 for franchise and advertising fees. With regard to the Matthews store, plaintiff Dunkin' Donuts states that Naman owes $108,993.44 for franchise and advertising fees, including a credit for $11,788). (Id. at 4.) Plaintiff Baskin-Robbins states that Naman owes $16,013.38 for franchise and advertising fees. (Id.)

### B. Breach of Lease Claims

Plaintiff and Rachana entered into the Mint Hill lease agreement on August 25, 2005.

-2-

(#38-4 at 38.) Under the Default and Termination section, Rachana agreed to the following:

> If Tenant fails to pay to Landlord when due any payments required under this Lease, Tenant agrees to pay interest on the unpaid amounts at the rate of 18% per annum or the highest rate allowed under applicable law, whichever is less, in addition to the unpaid amounts. Tenant shall also pay, upon demand, all of Landlord's costs, charges and expenses, including reasonable attorneys' fees, court costs and fees of agents and others retained by Landlord incident to the enforcement of any of Tenant's obligations hereunder whether or not a suit is commenced. Tenant shall also pay upon demand attorneys' fees and court costs incurred by Landlord in any litigation, negotiation or transaction in which Tenant causes Landlord, without Landlord's fault, to become involved or concerned.

Plaintiff DB Real Estate states that Rachana owes $347,761.27 for rent and other charges. (#38 at 3.)

### C. Attorneys' Fees and Costs

The Mint Hill franchise agreement, Mint Hill lease, and Matthews franchise agreements all include language that defendants agree to pay plaintiffs' reasonable attorneys' fees and enforcement costs. Plaintiffs calculate their total attorneys' fees and costs to be $110,114.17 through February 24, 2012. (#38 at 4.)

### D. Procedural Events

On March 18, 2011, plaintiff filed a motion for preliminary injunction (#20), which the parties resolved, and this court granted on May 25, 2011, (#31). Defendants agreed to close the stores, remove any trademarks belonging to plaintiff, disconnect or transfer the business telephones, and return any materials to plaintiff which relate to operating the franchise stores by July 31, 2011. Defendants have complied with those terms. On February 16, 2012, the parties reached an impasse at mediation. (#36.)

On May 15, the individual defendants, Manoj Rawal, Bindu Rawal, and Vinyak Dave, filed a suggestion of bankruptcy. Defendants Naman Enterprises, Inc. ("Naman") and

Rachana, Inc. ("Rachana") remain as defendants. Both are North Carolina corporations whose sole officers, directors, and shareholders are the three individual defendants. (#1 at ¶ 9; # 39 at 2.)

The parties and their counsel appeared before this court on May 23, 2012. Plaintiffs indicated they were willing to accept a judgment in the amount of $503,376.29, which is the same amount that defendant Manoj Rawal previously acknowledged is owed to plaintiffs (# 42-1 at 1).

### III.  Applicable Standard

Plaintiffs have moved for summary judgment. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(Fed.R.Civ.P. 56(a).) The rule goes on to provide procedures for plaintiff to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
>
> (**1**) **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it

> may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(Fed.R.Civ.P. 56(c).)

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. (Anderson, supra.) "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." (Id. at 248.) A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." (Id.) The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. (Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980.) Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458

(4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. (Anderson, supra, at 255.) In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." (Id. at 252.)

## IV. Discussion

### A. Motion for Summary Judgment

Plaintiffs have shown undisputed evidence that defendants breached the contracts and failed to pay franchise fees. In response, defendants do not deny their liability for failing to pay the franchise fees but assert general defenses against plaintiffs. Defendants claim that they were misled as to the future viability of the franchises and that plaintiffs "engaged in bad faith negotiations" and strong-armed defendants into entering into the contracts. (#42 at 2.) They further claim plaintiffs made them "guinea pigs to test new concepts" and point to plaintiffs' previous failures in the geographic market, and were forced to purchase prepared donuts from a central manufacturing location, which required significantly higher costs than making them in-store. (Id.)

Defendants have filed no counterclaims but dispute the amount of monetary damages and specifically challenge the "erroneous calculations of rent and common area maintenance charges" at the Mint Hill location, based on several amendments made to the lease which lowered defendants' rent. (#42 at 1.) They do not dispute that a breach occurred but dispute the amount owed, alleging that plaintiffs breached the duty of good faith and fair dealing. (Id. at 2.) Defendant also allege that plaintiffs required them to commit to "above-market lease terms to prevent the loss of the initial investment." (Id.) This led to an "inevitable struggle to meet the onerous fiscal requirements." (Id.) Defendants conclude that they

"would not have entered into the Franchise Agreements" had they known the problems with the Charlotte market. (Id.)

However, defendants did take steps to educate themselves on the deal. They used Mr. and Mrs. Rawals' accounting backgrounds to prepare a business plan, calculating anticipated income and expenses based on other franchises and retained a lawyer who was involved throughout the process. (#38-1 at 3, 6, 8; #38-2 at 3; #43 at 2.) Before entering into the Mint Hill lease, they even determined that the rent was too high but nonetheless entered into the agreement. (#43 at 3.) One year later, the parties negotiated a two-year reduction in rent. (#43 at 4.) Notwithstanding defendant Dave's general lack of knowledge about the agreements or pending litigation, and who seems to be involved primarily as an investor, (#38-1 at 5), the parties are limited to the terms of the agreement and defendants' reasons for non-payment do not rise to the level of fraud, nor do they create a genuine issue of material fact.

With respect to the monetary amount of damages, the parties dispute a relatively small portion of damages relative to the total breach. Defendant Manoj Rawal admits that defendants owe $503,376.29, (#42-1 at 1), whereas plaintiffs calculate a total of $602,977.57, (#43 at 11). Notwithstanding the parties' acknowledgment that interest and attorneys' fees are applicable, plaintiffs have indicated in open court that they will accept the amount admitted by Rawal. Thus, plaintiffs have shown that no genuine disputes exist as to any material fact and are entitled to judgment as a matter of law and monetary damages in the amount of $503,376.29.

**B.     Motion to Withdraw**

Prior to the hearing on plaintiffs' motion for summary judgment, defendants' counsel moved to withdraw as counsel of record, (#49). The motion was previously denied without

prejudice pending the instant motion.  Defendants' motion will now be **GRANTED**.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion for Summary Judgment (#37) is **GRANTED**, and the Clerk of Court is respectfully instructed to enter a Judgment in the amount of $503,376.29 and to administratively close the file.  The Motion to Withdraw as Counsel (#49) is also **GRANTED**.  In light of the pending bankruptcy as to the individual defendants, plaintiffs are hereby granted leave to move to reopen the file when and if permission is received from the United States Bankruptcy Court.

Signed: May 29, 2012

Max O. Cogburn Jr.
United States District Judge